IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARY CLAAR,

       Plaintiff,

vs.

GRAPHIC PACKAGING
INTERNATIONAL, INC.,

       Defendant.

Case No. 12-cv-1067-JPG-DGW

**MEMORANDUM AND ORDER**

This matter comes before the Court on (1) defendant Graphic Packaging International, Inc.'s ("Graphic") motion for summary judgment (Doc. 23) to which plaintiff Mary Claar responded (Doc. 27); (2) Claar's motion to strike Tammie Taylor's declaration (Doc. 28) to which Graphic responded (Doc. 31); and (3) Graphic's motion to strike paragraphs six, seven and twelve of Claar's affidavit (Doc. 29) to which Claar responded (Doc. 32). For the following reasons, the Court denies Graphic's motion for summary judgment, denies Claar's motion to strike, and grants in part and denies in part Graphic's motion to strike.

1. **Background**

Claar's claim arises out of her employment termination by Graphic which she contends was in retaliation for her exercise of rights protected under the Illinois Workers' Compensation Act ("IWCA"). Graphic is a global supplier of beverage packaging and consumer folding cartons. Claar worked for Graphic at its Centralia, Illinois plant from October 7, 2004, until her termination on February 10, 2012. In her position as a "roll tender/catcher" Claar "dipped ink, tended a roll, filled coating, caught cartons, put them on skids, made tape bars, checked cartons, [and] folded cartons." Doc. 24-1, p 14.

On January 30, 2012, Claar sustained a shock from a machine while she was working causing pain in her arms. Claar reported the accident to her supervisor who informed Deborah Holle, Graphic's Environmental Health and Safety Coordinator, of Claar's injury. Holle scheduled an appointment for Claar to see a physical therapist and a doctor. Tammie Taylor, Graphic's Human Resources Manager, accompanied Claar to the doctor's appointment, and Claar observed Taylor roll her eyes during the examination. The doctor diagnosed Claar with a strain to her left forearm and wrist, and directed her to wear a wrist splint. Eleven days later Claar was terminated after she arrived late to work.

Graphic employed an attendance policy that resulted in the accumulation of points for unexcused absences and late arrivals. Graphic terminated employees who accumulated sixteen or more points. Graphic assigns points as follows: two points for an unexcused absence from an eight-hour shift, three points for an unexcused absence from a twelve-hour shift, eight points for an absence in which the employee did not call in, one point for arriving thirty minutes or less late to work, and three points for failing to use the automated call in system (the "ADP system") to report a late arrival or absence (in addition to the points assessed for the late arrival or absence).

To report a late arrival or absence, Graphic requires employees to call an automated number operated by ADP, Inc., and input the employee's identification and pin numbers. After an employee successfully inputs this information and reports their absence or late arrival, the ADP system generates an automated email sent to Graphic's human resources personnel notifying them of the employee's late arrival or absence. On at least some instances, employees have reported problems using the ADP system. Pursuant to unwritten company policy at the date of Claar's termination, Taylor had some discretion in assessing points when there was evidence of an ADP malfunction. The extent of this unwritten policy on February 10, 2012 is not clear;

however, Taylor did testify that if she witnessed an employee's difficulty logging in to the ADP system she would not assess points for failure to use the system.

On February 10, 2012, Claar arrived approximately ten minutes late to work. Prior to leaving for work, Claar attempted to call the ADP system, but was unable to report her absence through the system. It is unclear whether the system malfunctioned or Claar improperly used the system. The parties, however, do not dispute that Claar attempted to utilize the ADP system. When she arrived at work, she borrowed a co-employee's phone and again attempted to report her late arrival through the ADP system in the presence of the co-employee. This attempt was also unsuccessful.

Claar reported her unsuccessful attempts to utilize the ADP system to Chad Keigley, her immediate supervisor on the date in question. Kiegley instructed Claar to begin work without using the ADP system because she would only be assessed one point for a late arrival. On that day, Kiegley was filling in for another employee. Keigley was not familiar with all of Graphic's policies, such as the policy that assesses additional points for failure to report a late arrival through the ADP system. Approximately thirty minutes later, Keigley instructed Claar to report her late arrival through the ADP system. Kiegley provided Claar with the ADP call in number and observed her difficulty using the system. Eventually, Graphic's help desk reset Claar's pin number, and she was able to report her late arrival time.

Thereafter, the ADP system generated an email to a human resources employee who reviewed Claar's points. Prior to February 10, 2012, Claar had accumulated twelve points. After receipt of the ADP email, a human resources employee assigned Claar one point for arriving late and three more points for failing to report her late arrival through the ADP system prior to the start of her shift. This brought Claar's total points to sixteen. Taylor then reviewed Claar's points and decided to terminate Claar. Pursuant to Taylor's instruction, the department

3

manager and Kiegley notified Claar of her termination.  If Claar had reported her late arrival prior to the start of her shift, she would only have been assessed one point and would not have been terminated.  Also, if Taylor had used her discretion pursuant to the aforementioned unwritten policy to account for ADP system malfunctions, Claar would not have been terminated.

Pursuant to Claar's request, Paul Delong, the plant manager, instructed Taylor to investigate the termination.  As part of her investigation, Taylor received information that other employees were able to utilize the ADP system around the same time that Claar reported problems, but Taylor could not definitively say that the ADP system was working correctly at the time Claar attempted to report her late arrival.  Taylor and Delong ultimately determined Claar's termination was appropriate.  The evidence shows that both Taylor and Delong were aware of Claar's exercise of rights protected under the IWCA prior to her termination.

Claar filed her complaint against Graphic in the Circuit Court of the Fourth Judicial Circuit, Marion County, Illinois, alleging workers' compensation retaliation in violation of 820 ILCS 305/4.  Graphic removed the case to this Court based on diversity of the parties.  Thereafter, Graphic filed the instant motion for summary judgment in which it argues it is entitled to judgment as a matter of law because (1) it articulated a legitimate non-retaliatory reason for Claar's termination, and (2) Claar cannot show that Graphic's legitimate non-retaliatory reason for Claar's discharge was pretextual.  The Court will now consider the parties' motions to strike and Graphic's motion for summary judgment in turn.

## 2.  Motions to Strike

Pursuant to Federal Rule of Civil Procedure 56(c)(4) "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the

4

matters stated." A court cannot consider parts of an affidavit that fail to satisfy the aforementioned Rule. *Adusumilli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir. 1998).

### a. Claar's Motion to Strike

First, Claar asks the Court to strike Taylor's declaration (Doc. 24-3) because a statement in Taylor's declaration is "diametrically opposed" to her deposition testimony. A party may not create an issue of fact by submitting a declaration or affidavit that contradicts prior deposition testimony. *See Kolis v. Colgate-Palmolive, Co.*, 231 F.3d 1049, 1055 (7th Cir. 2000). Claar reasons that because a party cannot create an issue of fact by submitting an affidavit that contradicts a deposition, Graphic should not be able to submit a declaration in support of its summary judgment motion that contradicts the witness's deposition testimony.

The relevant portion of Taylor's declaration states as follows: "At the conclusion of my investigation, I determined that Plaintiff Mary Claar's inability to report her absence was a result of her own user error." Doc. 24-3, p. 8. Claar contends Taylor's statement is "diametrically opposed" to the following exchange from Taylor's deposition:

> Q. Okay. I can accept that. Do you have any evidence that Mary called and didn't get her password in correctly?
> A. That does not show up in anything. All it does is lock you out.
> Q. So the answer is no?
> A. No.

Doc. 27-2, p. 5.

While Claar finds these two statements "diametrically opposed," the Court finds them perfectly consistent with one another. There are "user errors" other than the incorrect entry of a pin number to which Taylor could have been referring in her declaration. Further, her declaration refers to a conclusion from her investigation, which was not the topic of the exchange identified in her deposition. Accordingly, the Court denies Claar's motion to strike.

5

### b. Graphic's Motion to Strike

Next, the Court will consider Graphic's motion to strike paragraphs six, seven and twelve of Claar's affidavit (Doc. 27-5). The paragraphs in question state as follow:

> 6. When I said that, Tammie Taylor looked disgusted and rolled her eyes, which gave the distinct impression that she did not believe me and manifested a hostility towards me telling the doctor that I had these problems, that they had a relationship to my work, and needed treatment.
> 7. When Dr. McIntosh concluded his examination, he was dictating his findings into his Dictaphone in front of us. When he mentioned the aches and pain in my hands, Tammie Taylor again appeared angry, disbelieving and frustrated.
> . . .
> 12. I was diagnosed by Dr. McIntosh with repetitive trauma problems in both of my wrists and my left elbow and am currently awaiting clearance for surgery from workers' compensation.

Doc. 27-5, pp. 3-4.

Graphic argues that the Court should strike paragraphs six and seven because they contain speculation and conclusory statements concerning Taylor's thought process and motivation. The Seventh Circuit has made it clear that "conjecture or speculation regarding the employer's motives cannot be used to defeat a summary judgment motion; affidavits must be based on personal knowledge." *Abioye v. Sundstrand Corp.*, 164 F.3d 364 (7th Cir. 1998).

The Court will strike the portions of paragraph six that contain speculation regarding Taylor's inner thoughts. Specifically, the Court strikes the portion of paragraph six in which Claar speculates that Taylor "did not believe me and manifested a hostility towards me telling the doctor that I had these problems, that they had a relationship to my work, and needed treatment." The Court, however, will not strike the remaining portions of paragraph six and seven that contain Claar's direct observations.

Next, Graphic argues the Court should strike paragraph twelve as inadmissible hearsay. The Court agrees that Claar cannot testify about what her doctors have told her about her

condition and strikes paragraph twelve as inadmissible hearsay. Accordingly, the Court grants in part and denies in part Graphic's motion to strike.

### 3. Graphic's Motion for Summary Judgment

Now the Court will turn to Graphic's motion for summary judgment. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252. With this standard in mind, the

Court will consider whether Graphic is entitled to judgment as a matter of law on Claar's claim of retaliation.

As a general matter, an employer may terminate an at-will employee for any reason or no reason at all. *Sweat v. Peabody Coal Co.*, 94 F.3d 301, 304 (7th Cir. 1996). Illinois, however, recognizes the tort of retaliatory discharge as an exception to this general rule. *Id*. To succeed on a retaliatory discharge claim the employee must establish that (1) the employee was discharged; (2) "the discharge was in retaliation for the employee's activities"; and (3) "the discharge violates a clear mandate of public policy." *Dotson v. BRP U.S. Inc.*, 520 F.3d 703, 707 (7th Cir. 2008) (citing *Hartlein v. Illinois Power Co.*, 601 N.E. 2d 720, 728 (Ill. 1992)).

The Illinois Supreme Court has already determined that the discharge of an employee in retaliation for the exercise of an employee's workers' compensation rights violates the clear mandate of Illinois public policy. *Dotson*, 520 F.3d at 171 (citing *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 357-58 (Ill. 1978)). An employee may establish retaliation for exercising his workers' compensation rights if he shows "(1) that he was the defendant's employee before his injury; (2) that he exercised a right granted by the [IWCA]; (3) and that he was discharged from employment with a causal connection to his filing a workers' compensation claim." *Dotson*, 520 F.3d at 171 (quoting *McCoy v. Maytag Corp.*, 495 F.3d 515, 521 (7th Cir. 2007)).

Here, the parties agree that Claar was an employee before her injury and she exercised a right protected by the IWCA. Only the third causation element is at issue. In a workers' compensation retaliatory discharge claim, the plaintiff must establish more than "a sequential connection – the filing of a workers' compensation claim followed by termination" to satisfy the causality requirement. *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994). Rather, "[t]he plaintiff must affirmatively show that the discharge was primarily in retaliation for his exercise of a protected right." *Id.*; *accord Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 774

(7th Cir. 2012). To that end, to survive summary judgment, a plaintiff "must 'proffer[] sufficient evidence from which a reasonable jury could infer that the employer was improperly motivated.'" *Gordon*, 674 F.3d at 775 (quoting *Roger*, 21 F.3d at 149). A plaintiff may rely on circumstantial evidence to establish an improper motive. *Teruggi v. CIT Group/Capital Finance, Inc.*, 709 F.3d 654, 661 (7th Cir. 2013). Only then must the employer provide a legitimate reason for terminating the plaintiff's employment. *Gordon*, 674 F.3d at 775.

If the employer has a valid, non-pretextual basis for the termination, the employee cannot show causation and his claim must fail." *Id.* (citing *Hartlein*, 601 N.E.2d at 728). "To show pretext a plaintiff must offer evidence to indicate that the employer did not honestly believe the reasons it gave for its action and is simply lying to 'cover [its] tracks.'" *McCoy v. Maytag Corp.*, 495 F.3d 515, 522 (7th Cir. 2007) (quoting *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 435 (7th Cir. 2005)). "In other words, pretext 'means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.'" *McCoy*, 495 F.3d at 523 (quoting *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1129 (7th Cir. 1997)); *see also Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1310 (7th Cir. 1997) ("The fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered reason is pretextual.").

Here, Claar has presented at least some evidence that Graphic was improperly motivated when it terminated her. Claar has established the initial sequential requirement – she exercised a protected right when she visited the doctor for her work-related injury and Graphic terminated her employment eleven days later. *Lang v. Ill. Dept. of Children and Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004) ("Close temporal proximity provides evidence of causation . . . , and may permit a plaintiff to survive summary judgment provided that there is also other evidence that supports the inference of a causal link.").

Claar has also offered evidence that Taylor may have been improperly motivated when she made the decision to terminate Claar. Taylor clearly knew Claar exercised a protected right because she attended the doctor's appointment with Claar. Claar describes Taylor's reactions to Claar's complaints of pain to the doctor from which a jury could either infer Taylor was not happy that Claar was reporting her injury or she believed that Claar was faking the injury. The record further indicates that Claar reported her problem with the ADP system to her direct supervisor who told her to begin work and she would only be assessed a point. In this situation where Claar's supervisor witnessed her difficulty with the ADP system, the record demonstrates that Taylor had some discretion to assign points to Claar that led to Claar's sixteen point accumulation. Viewing this evidence in the light most favorable to Claar, a reasonable jury could infer that Taylor was improperly motivated when she decided to terminate Claar.

Graphic, in turn, argues it had a legitimate reason for terminating Claar because she exceeded the allowable points under Graphic's attendance policy. Claar argues that this reason is merely pre-textual and there is evidence that her termination was actually in retaliation for the exercise of workers' compensation rights. The record demonstrates that Graphic did generally terminate employees upon receiving sixteen points; however, Taylor testified that she had discretion in awarding the points because of an unofficial Graphic policy that forgave points when an employee had trouble utilizing the ADP system. The evidence demonstrates that one other employee and Claar's supervisor witnessed her difficulty logging into the system. If Taylor had used her discretion and not awarded Claar the three extra points, Claar would not have accumulated sixteen points and would not have been terminated.

Viewing this evidence in the light most favorable to Claar, a reasonable jury could conclude that Taylor had knowledge that it was no fault of Claar's own that she was unable to comply with company policy and it was not appropriate to assess points that led to Claar's

10

termination.  It is also relevant that the two individuals in charge of Claar's termination, Taylor and DeLong, knew Claar had recently reported and visited a doctor for a work-related injury.  At this point, there is evidence from which a jury could conclude that the purported reason for Claar's termination was a lie.  It is for the jury to determine whether Taylor's failure to exercise discretion in assessing the points that led to Claar's termination was because Claar had exercised rights under the workers compensation statute.

4. **Conclusion**

For the foregoing reasons, the Court

- **DENIES** Claar's motion to strike (Doc. 28);
- **GRANTS in part and DENIES in part** Graphic's motion to strike (Doc. 29). Specifically, the Court grants the motion in that it strikes the portions of paragraph six that contain speculation regarding Taylor's inner thoughts; denies the motion to strike with respect to the remaining portion of paragraph six and paragraph seven; and strikes paragraph twelve in its entirety; and
- **DENIES** Graphic's motion for summary judgment (Doc. 23).

**IT IS SO ORDERED.**

**DATED:**  September 25, 2013

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
